Case number 14-5369. James Lee v. United States of America. Oral argument not to exceed 15 minutes or time. Mr. McNally, please follow up. Good morning, Your Honors. My name is Patrick McNally, and I represent the appellant, J. Lee, in this matter. And this case really comes down to one issue, and it's here before the court upon an appeal of denial of Mr. Lee's 2255 motion to vacate his conviction. I would like to start by first reading specifically from the transcript where trial counsel testified during the evidentiary hearing. Trial counsel was asked if Mr. Lee had been given the correct advice about whether he would be deported upon entering a plea of guilty, if he knew that he would be deported upon a plea of guilty to the indicted charge, would you, trial counsel, have taken the chance of going to trial? The answer is, I would advise him to. I would advise Mr. Lee to go to trial. This case comes up to you from the Hill v. Lockhart, Bedelia, and then eventually to this court for a decision about what is the standard for prejudice that a person must show in order to vacate their conviction. There is no question. All the parties have conceded. The report and recommendation by the magistrate judge concluded, and the district court adopted the findings of facts by the magistrate judge, that trial counsel in this case gave misadvice to Mr. Lee. Mr. Lee was charged in a single-count indictment with possession of ecstasy for resale. Mr. Lee entered a guilty plea based upon trial counsel's advice that he would not be deported, that he would not be deported. Trial counsel conceded during the evidentiary hearing. I didn't realize this was meant. The question is if he had gone to trial, which his counsel apparently would have recommended that he do, if he had gone to trial and been convicted, would he have been deported? Yes. He would be deported if he had gone to trial. You were going to say something. I don't mean to interrupt, because you're getting right to the heart of this whole case, and that is what standard is applied to determine whether there's prejudice. The magistrate judge ruled that the conviction should be vacated and he would be set for trial. As is said in some of the cases that I've cited in my brief, he was going to roll the dice, unless his counsel was able to then get creative and try to come up with a different type of negotiation based upon the information that he would be deported if he pled to the indictment. I mean, the whole basis of this negotiations and the acceptance of this plea by Mr. Lee was because he believed he was not going to be deported. In the prejudice inquiry, are we allowed to consider how much evidence there is against him? Yes. I think that's a collateral or corollary. I'm sorry. I'm stumbling on my words. But I think that is something that can be considered. But if you look at the third side. In other words, it's not enough that the individual comes up and says, boy, if I'd known about this deportation point, I would have gone to trial. That by itself is not enough to show prejudice. Absolutely. I agree. What the courts have looked at is we don't just focus on would you have been convicted and therefore be in the spot you're in right now, or did you get some benefit, for instance, lesser time by the plea bargain because of acceptance of responsibility on this guideline 3E. The courts also look and need to look at, well, what are you really getting from this plea bargain? And here Mr. Lee gets nothing, and as was testified at the trial and as looked at in various other cases from the Fourth Circuit and the Third Circus, which are on page 38 of my brief, they looked at, wait a second, we've got to look at the whole picture here. Not just would he have been convicted if he'd gone to trial, or is it likely from the objective standard, but did he get anything? He got a downward departure, didn't he? He did, but it got him nothing, because a downward departure just means he's going to be deported one year sooner than he would have if he'd gone to trial. Longer than he might have been otherwise, even though he would have been in prison. If he'd gone to trial, he might have won and he might have lost. That's not what I said. I'm sorry. Nobody seems to question that there was a ton of evidence here, so we can look at that. But the problem that I have in your saying, well, the real issue is, what did he get from the plea bargain? He did get a downward to some extent, which meant that he wasn't in prison as long as he might have otherwise been,  He's postponing his deportation, which appears to be pretty much a given. So what should he have gotten? What else could he have gotten from the plea bargain? Well, and that's exactly what Padilla goes to, Your Honor. If his lawyer had been operating with correct information, that if we enter into this plea agreement, you will be deported, it's very clear from the record Mr. Lee would not have accepted the plea bargain. But his counsel could have gone and then creatively tried to work with the assistant U.S. attorney to come up with a different type of plea bargain that would not have resulted in being deported. And that, Your Honor, is exactly what Padilla wrote in the cases where it was holding. Do you have to have any kind of likelihood of success? There's an enormous amount of speculation that you're suggesting is part of this, that maybe it's a sort of, you know, if we had some ham, we could have a ham sandwich if we had some bread here. The deportation doesn't look very iffy. So what would have been the ammunition that his counsel could have utilized to get a deal that prevented the deportation or didn't result in deportation? In looking at the Fourth Circuit case of Atkins and also the Third Circuit court case of Orucio, they said that what you look at is the ties the individual has to the community in trying to negotiate a different type of settlement. You look at the fact that Mr. Lee came here when he was 13 years of age. He's legally permitted. The Third Circuit says you don't need anything. All you need is the say-so that you would have gone to trial. And you already admitted we require more than that. Well, I think the Third Circuit court case, though, in Orucio goes a little bit further and says we look also what are the things that the person will lose if they take this plea bargain. And they looked at the fact that some of these cases here. In fact, they said that a person may very well go to trial facing a 10-year minimum sentence, and that decision would be reasonable given everything they're going to lose if they accept the plea bargain and are deported. Right, right. That just goes to the calculation of how much they prefer this country to the country to which they'd be deported. But I asked you at the outset that that's not the only question. And that's what the Third, Eleventh, and Ninth have said. All they care about is if the person gets on the stand and said, boy, if I'd known this, I would have gone to trial. I don't care how many years I would have faced. But that's the reason I asked you the question. And you said it's not enough that the individual says because I like this country so much, I'll risk anything to stay here. You have to look at the evidence to figure out if there's any chance, reasonable chance, they'd avoid getting convicted. I was responding to Your Honor's question that if all they said is I would have gone to trial rather than take the plea bargain if I'd known I was going to be deported, I think what I was trying to say was you also have to look at what are they going to lose. For instance, if it's a fellow who just came over the border. So your position actually is, the answer is different. Your position is who cares what the evidence is. The evidence doesn't matter. What matters is how much the person would prefer to stay here rather than there. Not just prefers, but what are their ties actually here. And I think I'm not completely excluding what is the evidence. I think that's one factor of many factors to look at. There are many factors to look at as to whether this decision to accept the plea agreement is reasonable or rational or not. One of them would be what is the evidence. All right, it's likely I'll be deported if there is a good chance I could be found guilty. But as Mr. Fitzgerald said, you never know when you go to trial what may happen. And you also have to factor in there not only the evidence that the government has, but also what are the individual's real ties to this community. Like Mr. Lee has two businesses that he owns. His parents, his elderly parents are citizens here. His sister resides here. He's been here. He's now 45 years old. Came in at 13. He's been what? Tell me if this is fair. Do we have to ask is there a reasonable chance that you would not have been convicted? Is that a fair way of thinking about the point? I think that's one of the factors you would add in there. Well, if there's no reasonable chance that you wouldn't have been convicted, doesn't that mean there's no prejudice? No, that does not mean across the board there's no prejudice. That's just one factor to consider about many others about whether you would take a chance. And I don't think anybody can ever say there's no chance you won't be acquitted or found guilty of a lesser charge. Well, I use the word reasonable. Okay. It's one factor about many that need to be considered. And I think that's a way of reconciling all of these different opinions out there. From the ones that say all we've got to do is have the person say I would not have accepted the plea agreement if I'd been given competent advice. Other ones say, well, let's look at the evidence that they have in the case. The most important one is Hill. And it obviously tells you to look at the evidence. That would seem to me to be the end of the story. Well, and Hill also says your prejudice is Hill also says, though, that the second part of it is but for standard. That is, would you have gone to trial but for your lawyer's misadvice? And then they look at is it a reasonable decision to go to trial. I agree, but they start off, though, with the prejudice. But you've got to win on both.  You do have to show that I would have gone to trial. And there would have been a reasonable chance of prevailing. Well, not a reasonable chance of prevailing, that the decision not to accept the plea bargain was reasonable. Again, that goes to what I'm talking about here. It's not that I've got to show I would prevail, but that the decision not to accept the plea was reasonable and rational. And you take all the factors into consideration, not just whether I would have won or not. That's what I'm getting to. What's his status? Where is your client now? What's the status of him? He's in custody of the marshals right now, Your Honor. And he's actually served more than what he would have gotten if he'd gone to trial. But he's happy about that because he's here. He's not happy about it, Your Honor. He's in custody. He'd like to be home. He'd like to be running his restaurants. I would have thought of that before he got involved in this, but that's neither here nor there. I know. That's an argument I have to face all the time in negotiations. He could be deported if he wanted to be immediately, right? Correct. I think his position would be less tenable. Your Honor, may I add one other thing with the minute I have left on my argument? And that is another aspect of prejudice here. And we sort of touched on it a moment ago about what would you do in negotiations. And I'm reading directly from the Bedelia decision. Informed consideration of possible deportations can only benefit the state and the non-citizen defendant during plea bargaining process. By bringing deportation consequences into the process, the defense and the prosecutor may very well be able to reach agreements that better satisfy the interests of both parties. Looking at the reasons why Mr. Lee would not want to leave this country, why he would benefit other people like his parents to be here in this country, and being aware that it would automatically trigger his removal if he accepted this plea agreement, his lawyer operated during this critical part of the process, the negotiations, without the right knowledge of the law. And that's what it says here. In sum, we've long recognized that negotiations of plea bargaining is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel. Mr. Lee's lawyer went in and negotiated with him. Did he ever answer the question, would he rather be in jail here or deported? Did Mr. Lee ever answer that on the? Well, do you know the answer to that question? Yes. And the answer is he'd rather be in jail here? Yes, sir. The longer the sentence, the better. If it meant that he would not be deported at the end of it, yes. Do you know what I'm saying? He would take a 10-year sentence and not be deported. Yes, Your Honor. And that exactly is what Adelia says and some of the other cases have said, that a person may very well risk a 10-year mandatory minimum sentence and then be deported. There's a lot that caused him to want to stay here. I mean, the fact that his answer is yes to your question, evidence is that he wants to stay here for reasons, family reasons. And those cases are really saying he'd rather stay in jail the rest of his life here rather than be deported. I don't know if I want to go that far, Your Honor. Okay, so there is a difference. There probably are degrees to answering the question, but five, ten years, yes. As that one case from the Fourth Circuit says, an individual may very well want to stay a decade in prison than to have multiple decades of being banished from this country. He loves it here. Thank you. Good morning. May it please the Court, my name is Kevin Whitmore and I represent the United States. What's important is that this Court has already resolved this issue very clearly in two cases. We have Pillar versus United States in February of 2012 that this Court decided and laid out the standard for addressing these type cases. Similarly, you have Haddock that was decided in June of 2012. No more than three months later, both providing guidance to litigants as it relates to these type issues. And this is what this Court stated, that the task for prejudice, and the government would concede that the attorney performance was deficient, but the test for prejudice is an objective test. It's not subjective as the applicant has requested. It's an objective test. And as this Court has stated . . . Objective about what? I mean, if it's objective about just, I like this country so much I'll bet anything. I would say the evidence supports prejudice here, but if the objective test goes beyond that to the evidence of guilt, then I don't know. Your Honor, we would assert that that's a subjective test. Once we turn to the individual defendant, that would be a subjective test. An objective test is looking at things such as evidence as it relates to the outcome, whether or not there is a benefit, whether or not it was rational under the circumstances, whether or not there were going to be a different outcome. At the end of the day, is it rational? Just because a person knows that they're going to be convicted anyway, that they would go to trial. And as this Court stated, we look at the evidence, and so let's look at the evidence in this case. The defendant was set up where there was a controlled delivery in which the police purchased approximately 15 pills from him for $300. They used that later to secure a search warrant in which they gained another 88 pills. And we're talking about, I apologize, ecstasy. The defendant confessed. His only defense is that I passed out ecstasy to friends at party, which is not a defense that's also satisfied the element of distribution. It would not be rational under the circumstances for this defendant to not have pled guilty. One of the things I'm wondering about is that it might not seem rational to me that somebody in the position of the defendant here would just essentially automatically be deported. I mean, he's been here for a long time. He's been a taxpaying citizen. He has businesses, family ties, and he's done some dumb criminal activity. Is there any substantial likelihood here that had he gone to trial and been found guilty that he would not have been deported? No, Your Honor. In fact, it would have been automatic as it is now. The only reason right now Mr. Lee has had probable cause satisfied in terms of hearings, the only reason Mr. Lee is not deported now is based on this court's state. If he was found guilty or pled guilty as it relates to a drug offense, a felony drug offense, deportation is automatic. And as this court stated, that when defendants engage in criminal activity, they always compromise their families. Whether a person is being sent to prison for 20 years, 30 years, life, the family. Would you remind me if the plea deal is undone, he now gets to go to trial, what's the outer range sentence he could get, you say? The longest sentence that's within the range of likely. Okay, it's a 20-year maximum, statutory maximum. That's not likely. No, Your Honor. At that particular time, he was facing 24 to 30 months of imprisonment. That was the guideline range? That was the guideline range. He received a below... So two to three years, and maybe you could have an upward variance. So if he gets what he wants, he's got the risk of what, three to four years? That's correct, Your Honor. But what if the position is, I know this gets back to your objective subjective point, but it's truly sincere. The person would just rather take this one in a hundred shot of winning, knowing full well the odds are high you'll be in prison for three to four years. Don't mind that too much because you really don't want to leave the country anyway, even if it means being in prison. Why is that objectively unreasonable if one decides to believe that the person really would prefer to stay here, even for that one, two, three percent chance? Your Honor, the best way I can answer that question is going back to this court's decision in Pillar. That defendant was in the same situation. Going back to this court decision . . . We rejected it there, I assume, because there was so little evidence that could support the defendant. That is correct, Your Honor. I mean, we have other . . . We have someone saying, I like the country enough, I'd rather be here in prison than I would be free in the country of deportation. And the best way I can answer that, Your Honor, respectfully, that would be irrational. That would not be a rational decision, and this is what this court is saying, that the decision to plead guilty or not guilty must be rational under the circumstances. Yes, defendants may be willing to risk a great deal, but would it be rational? Does it make sense? This is something that this court ought to be considering. And again, are we going to set up a standard where we decide who we feel the sorrows for the most? Maybe this person's been in the country 40 years. Are we going to give the person the benefit of the doubt who's been in 30, 20, 10? If the plea bargain is set aside so that he has the ability to go to trial, can the government then bargain away deportation? No, Your Honor. And, in fact, Your Honor, that's what, in fact, happened in this case. During the hearing, defense counsel testified that he thought he had an agreement with the government, that is, the United States Attorney's Office, that his client would not be deported. The United States Attorney's Office, it has no control over Homeland Security. And could the trial judge waive deportation? To my knowledge, no, Your Honor. I mean, that is outside of— But the government could lower the charge. That happens all the time in plea bargaining. In a case like this, Your Honor, where you have limited facts— but not with possession with intent to distribute. Doesn't that change the calculation in terms of deportation? That is correct, Your Honor, but that's saying that the government would have to lower the charge. Judge Norris' question was, is it possible if the plea deal is undone, we go back to where you were before, it's possible that part of the plea agreement is to lower the charge? I mean, that happens all the time. In a case like this, Your Honor, it would not. I mean, the evidence is overwhelming. There's no reason. Plea bargain takes place where it's a quid pro quo, where we believe we're going to gain something. Maybe the evidence is weak. Maybe there are other deficiencies in the case. We have a confession. We have a control by— If you take a deal that says lower the charge, I'll take four to five years in prison in connection with my plea. Just don't deport me at the end. How could you be unhappy with that? He's not hurting anybody for three to four years. It would probably even take four to five. Your Honor, the reason Mr.—I apologize. I'll just refer to his attorney. He took the deal that was offered. That was the deal that was in this case. Any facts outside of that, this court would be speculating, we would be speculating. The deal was that he would plead guilty. Typically, in a case of this magnitude, when you think of distribution of drugs, typically it's a felony offense. The C.I. mentioned and it's in the record that he had been dealing with this individual for over 10 years. In fact, the court said during this period of time he was responsible for over 300 STC pills. He admitted that he threw parties and provided STC to friends. I mean, it is a controlled substance. It's banned for a reason. There's no reason to minimize the seriousness of this case because this kind of case jerks on all of our hearts. At the same time, defendants every day in this country are making decisions that will affect their lives. And sometimes it is affecting their lives in terms of compromising their families. And I don't think we should be used. I apologize. This court, on two separate occasions, have applied an objective standard. Not only that, Your Honor, in two district court cases, looking at the cases that this court have already decided, applied it in United States v. Shen, no more than six months after Haddock was decided. Applying this court standard made the decision that it was not a realistic chance of acquittal and the defendant received the benefit of probation. And based on the evidence being overwhelmed against him, who had been in the country a while, operated numerous retail stores, this court concluded that he did not overcome the burden for prejudice. And keep in mind the Supreme Court has stated in Strickland that the prejudice prone is never an easy task. Further, in Padilla, the Supreme Court has observed that often it is quite difficult for petitioners who have acknowledged their guilt to satisfy strictly prejudice prone. We have United States v. Abu, which is another district court case. Again, following this court's instructions in Pillar and in Haddock. In that particular case, they found that the evidence was weak against the defendant in that case and found that he could have met the prejudice prone. So it is an objective test and it is in the best interest of all the parties involved that we have clear guidelines. And the test that we have right now that this court has already provided. And what would you do with a case that, say, forget Padilla. Padilla's already, you know, so it's a today case. The person's charged. He comes in and talks to his lawyer and the lawyer tells him the risks, the sentences, the likelihood of conviction. And so before any of this, he's got a plea deal in front of him and the client says, presumably quite honestly, there's no reason to lie at that point, you know, I don't care about jail. I don't care that my chance of winning are very low. I just care about one thing, deportation. That's the only thing I care about. I'm going to be persecuted when I go back. That's all I care about. And the lawyer just gets it totally wrong. Gives him the wrong advice that, well, then if that's all you care about, take this plea deal because that's the only way to avoid the one thing you care about. And then it turns out it's just like this case at that point. The lawyer was wrong. So there you have a situation where forget the objective stuff. We know what this individual thought. They just cared about one thing and one thing alone. The lawyer totally botched it and created a situation where the one thing he didn't want he got. We would still say, well, no, it's an objective inquiry. How would that work? It just seems very strange to me in that situation where there's no reason to think there's lying, there's no reason to think anything else is going on but the truthful perspective of that individual. Your Honor, the best way I can answer that question, and I hope I am answering your question, can I converse it? Let's say that person is in that situation and they decide to go to trial, and they have a trial that's convicted, and they're convicted. My question to the court is that person is any different than he would have been had the attorney given that bad advice and he pled guilty. He would have been in the exact same predicament, and that's the reason this court on two separate occasions, I know the appellate continues to state third circuit. You just answered one possibility, but there's the other possibility, the 1% Hail Mary works. Now I'm pretty confident I know what you think. You'll be pretty happy. Your Honor, I would say as it relates to the Hail Mary is that most defendants in our system are found guilty. Matter of fact, when we think about the innocent report, it's saying that innocent people are in fact found guilty. The point of the matter of facts win cases. That's the reason we look at the evidence because facts do win cases. I would love to think that I'm this excellent prosecutor and that the jury somehow believes that somehow I have hoodwinked them. In fact, I think every prosecutor that stands before a jury, they're putting forth facts that they believe will carry the day. So once in a while there may be a Hail Mary, but at the end of the day, Your Honor, facts win cases. And the facts of the case that's before this court right now, as the defense counsel stated, it was a bad case. Those are his exact words. He said, I would have tried it, but it's a bad case. It was a loser. So at the end of the day, Your Honor, with all the concerns that this court, I see that my time is almost up. May I finish? Please. This is a tough case. And it's easy for the government to come up here and just take a hard line. It's not a hard line. We're following your cases. We're following the standards that this court has already laid out. And this is not an outlier case. This case fit right in the center of it. And we see no reason for this court to change its standards. Thank you. This is exactly the case Your Honor was describing and partly what Your Honor was describing. There is no question from the record by the testimony of the trial counsel that Mr. Lee was pursuing a negotiation that would result in him not being deported. That was, as trial counsel said, a big deal, the big deal in the case. Mr. Lee pursued. In fact, trial counsel testified that if Mr. Lee pursued his constitutional right to a jury trial, he advised that the government would initiate deportation proceedings if a conviction occurred. Counsel further communicated to Mr. Lee that acceptance of the plea offer from the government would avoid any risk of deportation. So his ineffective assistance was negotiating this plea. Correct. And the only reason this plea was accepted was the belief that he would not be deported. Counsel brought up a couple of these cases like Pilyer. Well, Pilyer is distinguished from this case. To begin with, Pilyer's got a lot of procedural problems. Ms. Pilyer did not raise a 2255. She raised a 2255 but didn't allege ineffective assistance of counsel. She failed to include that. She came back much later with a quorum novus. It was also pre-Padilla. But please remember, I'm trying to go under Strickland v. Washington for Mr. Lee's case here on his 2255. But also in Pilyer, they applied, as a Wisconsin state court has already said, they were applying the wrong standard. All they looked at in Pilyer was would it have been found guilty? Did it make sense to accept the plea bargain in light of the fact it would have been found guilty? It failed to consider was there reasons not to accept the plea bargain, the other side of it. Is there anything in the record to tell us that when the government engaged in plea bargaining, it thought deportation was the main issue? No. No, no one from the government testified during the hearing other than, I guess, to be an advocate for my client, I think implicit in Mr. Fitzgerald's communications to Mr. Lee, it would imply that the government was suggesting they would not seek or pursue deportation proceedings. But, Your Honor, the Assistant U.S. Attorney's Office does not control ICE, even though they're under the United States government, they are separate entities. The only way the Assistant U.S. Attorney can help Mr. Lee not be deported is by negotiations. And you know what? Negotiations aren't just on the strength of the government's case against the accused. Negotiations also involve elderly parents, proffers that were made, cooperation. Negotiations also involve a person's business interest in the community, being a lawful taxpaying citizen for 20 plus years, explanations or mitigation as to why you're engaged in throwing parties and entertaining people, things of that nature versus the evil intent of trying to move ecstasy out on the street. Your Honors, I'm going to just finish real quick. Also, I want to remind everybody that 95 percent of the cases are by plea bargains, but they're done with competent advice by the attorneys as to what the actual consequences will be. You know, Padilla came back to the Commonwealth of Kentucky after the Supreme Court. And in 2012, the Supreme Court of Kentucky ruled that in evaluating prejudice, they said that accepting the plea agreement rendered Padilla mandatorily deportable. If he insisted on going to trial, the Commonwealth would have had to prove his guilt beyond a reasonable doubt, and Padilla would have had a chance of avoiding conviction, subjecting him to mandatory deportation. Moreover, had the immigration consequences of Padilla's plea been factored into the plea bargain process, trial counsel may have obtained a plea agreement that would not have the consequences of mandatory deportation. In light of Padilla's particular circumstances, taking such a chance would have been rational. For Padilla, exile is a far worse prospect than the maximum 10-year sentence. Thank you. Thank you, counsel. The case will be submitted. There being no further cases to be argued this morning, you may adjourn.